Maria del Carmen Guilbot Serros de **GONZALEZ, et al., Petitioners,**

v.

**Miguel Angel Gonzalez GUILBOT, Carlos A. Gonzalez Guilbot, and Maria Rosa del Arenal de Gonzalez, Respondents.**

No. 08–0961.

Supreme Court of Texas.

Argued Jan. 21, 2010.

Decided June 11, 2010.

Rehearing Denied Aug. 20, 2010.

Daryl L. Moore, Daryl L. Moore, P.C., Hector Garcia Longoria, Heard Robins Cloud & Lubel LLP, Houston, TX, Thomas R. Phillips, Martha G. Newton, Baker Botts L.L.P., Austin, TX, for Petitioners.

Andres Perez–Chaumont, Armando Lopez, Armando Lopez, P.C., William "Andy" Taylor, Andy Taylor & Associates, P.C., Eric D. Nielsen, The Nielsen Law Firm, P.C., Houston, TX, for Respondents.

Justice WILLETT delivered the opinion of the Court.

This appeal concerns two issues: (1) the procedure required to revest a state court with jurisdiction after remand from federal court, and (2) the definition of "tertiary recusal motion" in Texas Civil Practice and Remedies Code section 30.016. We agree with the court of appeals that the hand-filing of a remand order in state court is sufficient to transfer jurisdiction back to state court. However, the court of appeals erred in holding that section 30.016's reference to a "tertiary recusal motion" is limited to a third motion filed by the same party against the same judge. Accordingly, we affirm the court of appeals' judgment in part and reverse it in part, and remand to that court with instructions.

## I. Background

This intra-family dispute concerns the ownership and control of several food and beverage businesses formerly owned by Miguel Angel Luis Gonzalez y Vallejo, now deceased. Miguel was married to Maria del Carmen Guilbot Serros de Gonzalez, and together they had nine children. When Miguel died in 2003, his will was probated in Harris County. In May 2004, Maria, individually and as independent administrator of Miguel's estate, along with several of the children (Plaintiffs)[1] filed

---

1. Defendants note that the "Estate of Miguel Angel Luis Gonzalez y Vallejo" named itself as appellee in the court of appeals and as a petitioner/cross-respondent in this Court. Arguing that an "estate" is not a legal entity and cannot sue or be sued, Defendants contend that this Court lacks jurisdiction. However, there is no dispute that Maria and the other Plaintiffs were parties to the trial court's judgment, that they were designated as persons

suit in probate court against several defendants including two of Miguel and Maria's sons, Carlos and Miguel (Defendants), for stealing from the family businesses. In June 2006, Judge Mike Wood determined that Defendants had produced forged stock certificates during discovery in order to claim majority ownership of certain family businesses. Judge Wood issued sanctions prohibiting Defendants from further claiming or disputing ownership of the corporations, and set a trial on damages for January 8, 2007.

## A. Remand

On November 14, 2006, Judge Wood gave notice of a hearing to be held November 27. Before the hearing, Defendants removed the case to federal district court alleging there was complete diversity of citizenship. Nevertheless, Plaintiffs' counsel, Hector Longoria, appeared at the hearing and spoke with Judge Wood in open court and on the record. When Judge Wood asked about the status of the case, Longoria replied that the case had been removed, and that he was "going to do what I need to do to try to get it remanded back to here." Judge Wood stated, "I've had a lot of experience in removals.... I can't do anything." Judge Wood cautioned Longoria to "read carefully the statutes," and told him that "if the Order of Remand comes, then I would suggest that you bring a certified copy of it and give it to the clerk of this Court."

On December 14, 2006, the federal district court signed and entered an order of remand and ordered Defendants to pay $7,500 in attorney fees because Defendants had "no objectively reasonable basis to believe removal of this case was proper." That same day, the court provided to Longoria certified copies of the federal court docket sheet, memorandum on remand, and order of remand. The docket sheet indicates that these were given to "plaintiff's counsel so that they can be expedited by hand delivery to Harris County Court no. 2." Longoria hand-delivered those documents to the state court clerk the next morning.

Defendants appealed the remand order to the Fifth Circuit. The Fifth Circuit affirmed, holding: (1) Defendants had waived any objection to the remand procedure by failing to object; (2) the Fifth Circuit lacked jurisdiction to review the clerk's compliance with remand procedures under 28 U.S.C. § 1447(c); and (3) the district court did not abuse its discretion in assessing $7,500 in sanctions.[2]

## B. Recusal

Approximately two-and-a-half hours prior to Longoria's hand-delivery of the remand order to the state court clerk, Defendants filed a motion to recuse Judge Wood. Judge Wood declined to recuse himself and forwarded the motion to Judge Guy Herman, the Presiding Judge of the Statutory Probate Courts. Judge Herman appointed Judge Gladys Burwell to hear the motion and set a hearing date. Prior to the hearing, Defendants' counsel filed a second motion to recuse, this one against Judge Burwell. Defendants' counsel then filed a third recusal motion, this one against Judge Herman. Judge Burwell forwarded the motions to Judge Herman, who reset all pending recusal motions for hearing on January 8, 2007. Defendants did not appear at that hearing.

---

aligned with the Estate in the court of appeals, and that they have been identified as parties in filings with this Court. In any event, the Court on November 20, 2009 granted Plaintiffs' "Motion to Substitute Maria del

Carmen Guilbot Serros de Gonzalez et al. for the Estate as Petitioners/Cross–Respondents."

**2.** *Gonzalez v. Guilbot*, 255 Fed.Appx. 770, 771–72 (5th Cir.2007).

Judge Herman first dismissed the motion to recuse Judge Burwell because it was filed by the attorney for the Defendants on his own behalf, not by the Defendants themselves, and Texas law requires that motions to recuse be "filed by parties, not by attorneys." Judge Herman then dismissed the motion to recuse himself because it was also filed on behalf of Defendants' counsel, not on behalf of the Defendants. Judge Herman went on to note that the motions improperly invoked Texas Rule of Civil Procedure 18a rather than Texas Government Code section 25.00255, which governs recusal procedure in statutory probate courts. Finally, Judge Herman heard the motion to recuse Judge Wood. Because Defendants did not put on any evidence or argument in support of their motion, Judge Herman denied the motion and awarded sanctions in the amount of $12,000 for "frivolous pleading[s]".

 After the recusal hearing, Judge Wood began a bench trial. Again, Defendants did not appear. Judge Wood signed a final judgment for Plaintiffs on January 12, 2007, awarding roughly $205 million in damages.[3]

### C. Appeal

Defendants raised two discrete procedural points, the first governed by federal remand law, the second by state recusal law. Defendants argued the trial-court judgment and sanctions order were void because they were entered (1) before jurisdiction had revested in state court, and (2) while recusal motions were pending.

The court of appeals rejected the first argument but accepted the second.[4] It held that jurisdiction had revested in Judge Wood's probate court, but his judgment and Judge Herman's sanctions order were nevertheless void given the three pending recusal motions.[5] The court of appeals relied on its prior interpretation of Texas Civil Practice and Remedies Code section 30.016 in *In re Whatley*[6] and held that the provision for tertiary recusal motions only applies when a third recusal motion has been filed by the same party against "the same judge."[7] The parties filed cross-petitions for review.

## II. Discussion

### A. Remand

The revesting-of-jurisdiction question turns on this portion of 28 U.S.C. § 1447(c): "A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case." Defendants argue that section 1447(c) contemplates mailing and only

---

3. Defendants have filed a Request to Take Judicial Notice concerning a March 19, 2010 final judgment rendered against Plaintiffs by a Mexican federal court, purportedly holding that a "Family Agreement" among the parties is null and void. Defendants do not persuade us that the Mexican judgment, rendered years after the trial-court judgment in the case before us, should have any effect on this appeal. They concede that a trial court's judgment is final for purposes of res judicata or collateral estoppel even while the case is on appeal. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex.1986).

4. 267 S.W.3d 556, 558.

5. *Id.*

6. No. 14–05–01222–CV, 2006 WL 2257399 (Tex.App.-Houston [14th Dist.] Aug. 8, 2006, orig. proceeding) (mem. op.), *opinion withdrawn and superseded by In re Whatley*, 2006 WL 2948230 (Tex.App.-Houston [14th Dist.] Oct. 13, 2006, orig. proceeding) (mem. op.).

7. 267 S.W.3d at 562–63.

mailing, so Plaintiffs' hand-delivery did not revest jurisdiction in the probate court but rather circumvented and violated the remand procedures we mandated in *Quaestor Investments, Inc. v. State of Chiapas.*[8] We disagree. When determining jurisdiction under section 1447(c), what matters more is what the federal court ordered, not what the federal clerk mailed.

In *Quaestor,* a state district court granted a default judgment to Quaestor Investments, a Texas corporation, against the State of Chiapas on April 19,1995.[9] On October 5, 1995, five months and sixteen days after the default judgment was signed, Chiapas removed the suit.[10] The federal district court remanded the case on December 28, 1995.[11] On August 29, 1996, Chiapas filed a petition for writ of error in the court of appeals,[12] and Quaestor moved to dismiss the petition as untimely, arguing the petition must have been brought within six months of the date of judgment.[13] The court of appeals overruled Quaestor's motion to dismiss and remanded to the trial court, holding that the appellate timetable recommenced when Quaestor gave notice to Chiapas of remand.[14] Quaestor then filed a petition for review in this Court.

The central question in *Quaestor* was when the appellate timetable recommenced after remand.[15] We held it recommenced upon the revesting of jurisdiction in state court, which happened "when the federal district court executes the remand order and mails a certified copy to the state court. To the extent that earlier Texas court of appeals cases indicate that jurisdiction revests when the federal court executes the remand order, we disapprove of that language."[16] Defendants thus claim *Quaestor*'s broad language definitively established that the pivotal event for revesting is the mailing of the remand order by the federal-court clerk to the state-court clerk. Defendants misconstrue our holding.

Importantly, *Quaestor* did not involve the question presented here: whether jurisdiction revests when an executed remand order is hand-delivered to the state court in lieu of mailing. Today's case raises an alternative delivery method, something we had no occasion to examine in *Quaestor.* In short, *Quaestor* simply cannot bear the unduly rigid reading urged by Defendants.

Pressing their argument that hand-delivery of the remand order did not revest jurisdiction in state court, Defendants argue that neither the federal district court nor the state court can be vested with jurisdiction, so the case has become moot. According to Defendants, the federal district court has been divested of jurisdiction, including the jurisdiction to reconsider or modify its remand order. Next, jurisdiction never revested in the state court because hand-delivery was defective.

---

**8.** 997 S.W.2d 226 (Tex.1999) (per curiam).

**9.** *Id.* at 227.

**10.** *Id.*

**11.** *Id.*

**12.** Writ of error appeals under former Rule of Appellate Procedure 45 were replaced in 1997 with restricted appeals under Rule 30. *See* TEX.R.APP. P. 30 & cmt.

**13.** *Quaestor,* 997 S.W.2d at 227.

**14.** *Id.* at 227–28.

**15.** *Id.* at 227.

**16.** *Id.* at 229. Chiapas argued that the appellate timetable recommenced either when the Fifth Circuit dismissed the appeal of the remand order or when Chiapas mailed a copy of the remand order to the state district clerk. *Id.* at 228.

Finally, the mailing of a certified copy of the remand order to the state clerk can never occur because "[t]he federal court lacks jurisdiction to correct [Plaintiffs'] error." Defendants therefore contend that jurisdiction has been destroyed in both courts because the "key jurisdictional event" did not, and can never, occur.

■ We reject Defendants' argument that both federal and state courts have been divested of jurisdiction and the case now exists in a strange procedural twilight zone.[17] Consistent with section 1447(c) and its aim to smooth state-federal interactions, we hold that hand-delivery of the remand order in this case successfully effected the transfer of jurisdiction from federal to state court. It is beyond dispute that the federal district court expressed its unmistakable intention to divest itself of jurisdiction and return jurisdiction to the state court, by (1) signing and entering an order of remand, (2) creating a certified copy of the remand order, and (3) providing that certified copy to counsel for expedited delivery to the state court, all of which occurred before the state court took any action in the case.

We also reject Defendants' argument that allowing hand-delivery of the remand order to effect jurisdictional transfer in this case would destroy transparency and uniformity in the remand procedures. To the contrary, Texas Rule of Civil Procedure 237a expressly provides for the *plaintiff* to file a certified copy of the remand order with the state court clerk.[18] Efforts to quickly recommence proceedings in the state court following an unsuccessful and apparently frivolous removal actually further the policy of avoiding excessive delay in resolving disputes.[19]

Defendants here resumed litigation in the probate court with full knowledge of

---

**17.** See Health for Life Brands, Inc. v. Powley, 203 Ariz. 536, 57 P.3d 726, 731 (Ariz.Ct.App. 2002) ("A conclusion that the superior court regains the power to proceed upon entry of the remand order in federal court prevents a case from floundering in some sort of legal limbo while awaiting the ministerial task of mailing a copy of the remand order. Excessive delay in the resolution of disputes is thereby avoided. This approach also furthers the intent of Congress that any doubts about the existence of removal jurisdiction in the federal courts should be resolved in favor of remand and state court jurisdiction."); *see also City of Orange City v. Lot 10*, No. 98–1389, 2002 WL 100674, at *2 (Iowa Ct.App. Jan.28, 2002) ("We reject [the defendant's] contention that the district court lacked jurisdiction when it acted prior to having received a *certified* copy of the remand order from the Federal District Court.").

**18.** Tex.R. Civ. P. 237a states:

When any cause is removed to the Federal Court and is afterwards remanded to the state court, the plaintiff shall file a certified copy of the order of remand with the clerk of the state court and shall forthwith give written notice of such filing to the attorneys of record for all adverse parties. All such adverse parties shall have fifteen days from the receipt of such notice within which to file an answer. No default judgment shall be rendered against a party in a removed action remanded from federal court if that party filed an answer in federal court during removal.

**19.** See Health for Life Brands, Inc., 57 P.3d at 731 ("To hold under these circumstances that the [federal] court retains jurisdiction and the [state] court lacks the power to proceed would violate the principle that removal and remand procedures should not be construed to allow undue delay in the resolution of cases or to waste judicial resources."); *see also* Fed.R.Civ.P. 1 (instructing courts to construe and administer the federal rules "to secure the just, speedy, and inexpensive determination of every action and proceeding"); *Balestriere Lanza PLLC v. Silver Point Capital, LP*, No. 08 Civ. 4731(GEL), 2008 WL 2557424, at *2 (S.D.N.Y. June 26, 2008) ("Though [Rule 1] does not, strictly speaking, govern the interpretation of § 1447(c), it should be the touchstone not only of judicial action, but of the behavior of members of the bar as well.").

the remand. Further, it is undisputed that the probate court took no action until after the remand order had been hand-delivered there. In light of these circumstances, Plaintiffs' hand-delivery of the remand order was sufficient to revest jurisdiction in the probate court.[20]

## B. Recusal

Plaintiffs argue in their cross-petition for review that the motion to recuse Judge Herman was a tertiary recusal motion, and therefore the court of appeals erred in holding that Judge Herman's sanctions order and Judge Wood's final judgment were void. We agree with Plaintiffs.

The court of appeals held that under the general "recuse or refer" rule in Government Code section 25.00255(f), a judge against whom a recusal motion has been filed "has only two options: grant the motion to recuse or refer the motion to another judge for a ruling."[21] Thus, the court concluded, "Judge Herman erred when he ruled on his own motion to recuse" rather than referring the motion to the Chief Justice of the Supreme Court pursuant to Government Code section 74.057(a) and Texas Rule of Civil Procedure 18a(g).[22] "Because Judge Herman did not have the power to rule on his own recusal motion," the court reasoned, "all subsequent orders he entered are void."[23]

Plaintiffs argue that Judge Herman's sanctions order and Judge Wood's final judgment are not void for two reasons. First, the motion to recuse Judge Herman was the third recusal motion filed in the case and thus a tertiary recusal motion under Civil Practice and Remedies Code section 30.016, allowing Judge Herman to continue presiding over the case. Second, Plaintiffs contend that the exception for procedurally defective motions applies to the motion to recuse Judge Herman.

We first consider whether the motion to recuse Judge Herman was a tertiary recusal motion. Section 30.016 allows "a judge who declines recusal after a tertiary recusal motion is filed" to "preside over the case," "sign orders in the case," and "move the case to final disposition as though a tertiary recusal motion had not been filed."[24] Former section 30.016(a), applicable to this case, defined a "tertiary recusal motion" as "a third or subsequent motion for recusal or disqualification filed against a district court, statutory probate court, or statutory county court judge by the same party in a case."[25] The court of appeals followed its previous decision in *In re Whatley*,[26] where the court interpreted section 30.016 as applying only to "a third recusal motion . . . filed by the same party against the same judge."[27] We disagree with that reading and hold that section

---

20. Regardless of whether the court of appeals should have relied on the law-of-the-case doctrine, *see* 267 S.W.3d at 560, the court properly recognized that *"Quaestor* did not address the issue we have here" and held that "the post-remand jurisdictional transfer to the state court was complete at all relevant times." *Id.* at 560, 561.

21. *Id.* at 561.

22. *Id.*

23. *Id.*

24. Tex. Civ. Prac. & Rem.Code § 30.016(b)(1)-(3).

25. Act of May 26, 1999, 76th Leg., R.S., ch. 608, § 1, 1999 Tex. Gen. Laws 3148.

26. No. 14-05-01222-CV, 2006 WL 2257399 (Tex.App.-Houston [14th Dist.] Aug. 8, 2006, orig. proceeding) (mem. op.), *opinion withdrawn and superseded by In re Whatley*, 2006 WL 2948230 (Tex.App.-Houston [14th Dist.] Oct. 13, 2006, orig. proceeding) (mem. op.).

27. 267 S.W.3d at 562.

30.016 applies to a third recusal motion filed by the same party against *any* judge.

■ When construing statutes, courts must look first to the plain and common meaning of the words chosen.[28] If the statutory language is unambiguous, the judge's inquiry is at an end.[29]

The earlier version of section 30.016(a) provided:

> In this section, "tertiary recusal motion" means a third or subsequent motion for recusal or disqualification filed against a district court, statutory probate court, or statutory county court judge by the same party in a case.[30]

Effective September 1, 2007, the Legislature removed statutory probate judges from section 30.016(a), so the current statute only applies to district or statutory county court judges. Simultaneously, the Legislature added section 25.00256(a):

> In this section, "tertiary recusal motion" means a third or subsequent motion for recusal or disqualification filed in a case against any statutory probate court judge by the same party. The term includes any third or subsequent motion filed in the case by the same party, regardless of whether that motion is filed against a different judge than the judge or judges against whom the previous motions for recusal or disqualification were filed.[31]

The prior version of section 30.016(a) applies to this case. Defendants argue that, in keeping with the canon of construction that the Legislature is presumed not to have done a useless act, the Legislature's 2007 amendments demonstrate that lawmakers believed they were changing the law regarding statutory probate courts. In order to change the law, "tertiary recusal motion" in the prior version of section 30.016 must have meant the third recusal motion filed by the same party against the same judge. However, our analysis begins not with canons of construction or extrinsic aids, but with statutory text.[32] Former section 30.016(a) states that a tertiary recusal motion is a "third or subsequent motion for recusal ... filed against *a* ... statutory probate court ... judge by the same party...." The Legislature chose the word "a," presumably on purpose, not the words "the same." And lawmakers certainly knew when to use the latter, having done so to precede "party" in the same sentence. Neither text nor context suggests that "a" means "the same" rather than "any." Defendants' interpretation, adopted by the court of appeals, invites us to embellish the statute. We decline, mindful too that Defendants' interpretation would produce absurd results, with litigants able to delay resolution of their cases by clogging courts with a seemingly limitless number of recusal motions.

---

28. See *FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex.2008) ("We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired, but otherwise, we construe the statute's words according to their plain and common meaning unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results.").

29. See *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex.2006).

30. Act of May 26, 1999, 76th Leg., R.S., ch. 608, § 1, 1999 Tex. Gen. Laws 3148.

31. Tex. Gov't Code § 25.00256(a).

32. See *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex.2007) ("If a statute is clear and unambiguous, we apply its words according to their common meaning without resort to rules of construction or extrinsic aids.").

Our chief aim is to determine and give effect to the Legislature's intent,[33] and where the statutory language is straightforward, it is determinative.[34] Because the recusal motion filed against Judge Herman was the third recusal motion filed by Defendants (and therefore a tertiary recusal motion), Judge Herman was permitted to continue to "preside over the case," "sign orders in the case," and "move the case to final disposition as though a tertiary recusal motion had not been filed."[35] Accordingly, the court of appeals erred in reversing the sanctions order entered by Judge Herman and the final judgment entered by Judge Wood.[36]

## III. Conclusion

The court of appeals was right on remand but wrong on recusal. Plaintiffs' hand-delivery of the certified remand order from the federal district court to the clerk of the state court was sufficient to revest jurisdiction in the state court. We decline Defendants' invitation to add a measure of rigidity into section 1447(c) that simply is not there. As for recusal, a tertiary recusal motion is a third motion filed by the same party against any judge. That is, the word "third" in section 30.016(a) refers to the motion, not to the judge. Accordingly, we affirm the court of appeals' judgment in part, reverse it in part, and remand to the court of appeals. The court of appeals shall abate pending a ruling on the motion to recuse Judge Herman. If the motion is denied, the court of appeals shall affirm the trial court's judgment. If the motion is granted, the court of appeals shall reverse the trial court's judgment and remand to that court for further proceedings consistent with this opinion.

Justice GUZMAN did not participate in the decision.

33. *Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex.2009).

34. *See Alex Sheshunoff Mgmt. Servs.*, 209 S.W.3d at 651–52.

35. We agree with the court of appeals that under section 30.016(b) Judge Herman should not have ruled on the recusal motion filed against him. Plaintiffs make the blanket assertion that because the motion to recuse Judge Herman was a tertiary recusal motion, Judge Herman was allowed to rule on his own recusal motion. However, nothing in section 30.016 contemplates allowing judges to deny recusal motions pending against them, and in fact instructs judges "who decline[ ] recusal after a tertiary recusal motion is filed [to] comply with applicable rules of procedure for recusal and disqualification...." Judge Herman eventually referred that motion to CHIEF JUSTICE JEFFERSON, and we find no prejudice stemming from Judge Herman's belated referral. Also, as this was a tertiary recusal motion, Judge Herman retained authority under section 30.016(b) to take other actions, such as signing the sanc-

tions order against Defendants and denying the recusal motion against Judge Wood.

36. Plaintiffs alternatively argue an exception to the "recuse or refer" rule applies: the exception for procedurally defective motions. Plaintiffs contend that Defendants waived the right to complain about Judge Herman's failure to refer the motion filed against him because the motion failed to comply with the procedural requirements of Government Code section 25.00255. The court of appeals rejected this argument based on its holding in a prior case that "[e]ven though a motion to recuse may be defective, the challenged judge must either recuse or refer the motion, so that another judge can determine the procedural adequacy and merits of the motion to recuse." 267 S.W.3d at 563 (quoting *In re Norman*, 191 S.W.3d 858, 861 (Tex.App.-Houston [14th Dist.] 2006, orig. proceeding)). As the first argument advanced by Plaintiffs decides today's case, we need not reach the question of whether a procedurally defective motion provides an exception to the "recuse or refer" rule.